# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NUMBER: 07-10** |
| **MORRIS VIRDEAN WARNER** | **SECTION: "C"** |

## ORDER & REASONS

Before the Court is a Motion Seeking to Dismiss the superceding indictment, filed by the defendant, Morris Virdean Warner ("Warner") (Rec. Doc. 139). The Government opposes the motion. Oral argument was held on August 20, 2008, at which time the motion was taken under advisement. Having considered the record, the memoranda and argument of counsel and the law, the Court has determined that the motion to dismiss must be granted in part.

## I. BACKGROUND

On June 14, 2005, an arrest warrant and complaint were issued for Warner alleging violations of 18 U.S.C. § 1029(a)(2).[1] Warner was arrested on December 13, 2006 upon his return to the United States. The government moved to detain Warner at the initial appearance

---

[1]  18 U.S.C. § 1029(a)(2) prohibits the unauthorized use of access devices. The Complaint was accompanied by the statement of a special agent of the secret service specifically alleging that the debit card accounts of thirty-eight (38) J.P. Morgan Chase Bank customers had been compromised. Rec. Doc. 1, Attachment A.

1

before a magistrate judge on January 3, 2007.  Following a hearing on January 8, 2007 before a

district judge, Warner was ordered detained.  On January 11, 2007, a grand jury returned an

indictment charging Warner with one (1) count of counterfeit access device fraud alleging that

Warner used the debit card numbers and personal identification numbers of thirty-eight people in

violation of 18 U.S.C. § 1029(a)(1).[2]  Rec. Doc. 8.

On January 19, 2007, Warner was arraigned and entered a not guilty plea.  Rec. Doc. 11.

In addition, Robert Glass enrolled as retained counsel.  Trial was originally scheduled before this

Court on March 19, 2007.  Rec. Doc. 13.  To date, eight (8) motions to continue trial have been

filed and granted in this case.  See Rec. Docs. 15, 17, 19, 20, 22, 23, 38, 39, 54, 55 64, 65, 79, 80,

133, & 136.[3]  Additionally, Warner has changed attorneys at least five (5) times.[4]  On April 17,

---

[2] 18 U.S.C. § 1029(a)(1) prohibits the use of a counterfeit access device.

[3] The first Motion to Continue the Trial was filed by Warner's attorney, Robert Glass, on March 6, 2007 and granted March 8, 2007 (Rec. Docs. 15 & 17); the second Motion to Continue the Trial was filed by the Government on May 8, 2007 and granted on May 10, 2007 (Rec. Docs. 19 & 20); the third Motion to Continue the Trial was filed by Robert Glass on July 11, 2007 and granted the same day (Rec. Docs. 22 & 23); the fourth Motion to Continue the trial was filed by Warner's public defender, Gary Schwabe, on September 6, 2007 and granted on September 7, 2007 (Rec. Docs. 38 & 39); the fifth Motion to Continue the Trial was filed by Gary Schwabe on November 20, 2007 and granted on November 11, 2007 (Rec. Docs. 54 & 55).  The sixth Motion to Continue the Trial was filed by the Government on February 8, 2008 and granted on February 11, 2008 (Rec. Docs 64 & 65).  The Court notes that the sixth motion to continue was filed after Warner sent a letter requesting the withdrawal of his public defender (Rec. Doc. 68).  The seventh Motion to Continue the Trial was filed by the Government on May 1, 2008 and granted the same day (Rec. Docs. 79 & 80); the eighth Motion to Continue the Trial was filed by Warner's attorney, Arthur Lemann, on July 24, 2008 and granted on July 25, 2008 (Rec. Docs. 133 & 136).

[4] Initially, on January 3, 2007, Virginia Schlueter was appointed to represent Warner (Rec. Doc. 3); On January 19, 2007, Warner changed representation from Gary Schwabe, a public defender, to a privately hired attorney, Robert Glass (Rec. Doc. 12).  On August 7, 2007, Robert Glass sought withdrawal from the case because of irreconcilable differences (Rec. Doc. 31).  Virginia Schlueter was re-appointed to represent Warner on August 14, 2007 (Rec. Doc. 35).  By letter dated February, 7, 2008, Warner requested the withdrawal of his public defender

2008, the Government filed a Superceding Indictment alleging eighty-three (83) counts of criminal activity (Rec. Doc. 72).[5]  Trial is currently scheduled for October 20, 2008 (Rec. Doc. 136).

In the motion *sub judice*, Warner's attorney, Arthur Lemann ("Lemann"),[6] argues that the superceding indictment should be dismissed.  First, Lemann argues that this Court improvidently granted the sixth continuance on February 11, 2008 because the Court could not grant an "ends of justice" continuance based on the Government's representation that it intended to present a superceding indictment setting forth additional charges.  In addition, Lemann avers that the superceding indictment was improperly filed by the Government to "up the ante" and that the facts of this case must give rise to a presumption of vindictiveness by the Government.  Finally, Lemann asserts that the superceding indictment merely "gilds the lily" and that counts 1-75 in the superceding indictment are the same as the allegations in the original one count indictment.

_____

(Rec. Doc. 68); on February 14, 2008, Bruce Ashley was appointed to represent Warner (Rec. Doc. 70).   On May 8, 2008, Bruce Ashley moved to withdraw from the case (Rec. Doc. 85); on May 12, 2008, Virginia Schlueter was re-appointed to represent Warner (Rec. Doc. 87); then, Aris Cox was appointed to represent Warner (See Rec. Doc. 102).  The Court notes that on July 14, 2008, Arthur Lemann moved to withdraw from the case, and on July 23, 2008, an Order was entered re-appointing Arthur Lemann as Warner's attorney (Rec. Doc. 132).

[5] Counts 1 - 67 allege violations of 18 U.S.C. § 1029(a)(2), unauthorized access device fraud.  Counts 68-75 allege violations of 18 U.S.C. § 1029(a)(1), counterfeit access device fraud and Counts 76 - 83 allege violations of 18 U.S.C. § 1344.

[6] The Court notes that Warner "does not approve of the content and tone of this revised motion to dismiss."  Rec. Doc. 139.

## II. LAW & ANALYSIS

### 1. "Ends-of-Justice" and the Speedy Trial Act[7]

Recently, the Supreme Court addressed the 70 day requirement contained within the Speedy Trial Act ("STA"), "[t]he Act requires that when a district court grants an ends-of-justice continuance, it must 'set forth, in the record of the case, either orally or in writing, its reasons' for finding that the ends of justice are served and they outweigh other interests. *Zedner v. U.S.*, 547 U.S. 489, 506 (2006) (quoting 18 U.S.C. § 3161(h)(8)(A)).  The Supreme Court emphasized:

> The relevant provisions of the Act are unequivocal. If a defendant pleads not guilty, the trial '*shall* commence' within 70 days 'from the filing date (and making public) of the information or indictment" or from the defendant's initial appearance, whichever is later. § 3161(c)(1) (emphasis added). Delay resulting from an ends-of-justice continuance is excluded from this time period, but '[n]o such period of delay . . . shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.'

*Zedner*, 547 U.S. at 507-08 (quoting 18 U.S.C. § 3161(c)(1) and § 3161(h)(8)(A)).[8]

---

[7] The Court notes that the STA also contains a thirty (30) day time limit: "[t]he Speedy Trial Act requires that an 'indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.'" *U.S. v. Hartzog*, 189 Fed.Appx 340, 347 (5th Cir. 2006) (quoting 18 U.S.C. § 3161(b)).  Lemann challenges the 30-day requirement in the "gilding the lily" section of his motion.  For completeness, the Court notes that the Fifth Circuit ruled in *Hartzog*, an unpublished opinion, that "[w]hen . . . the government files a superseding indictment based on the same criminal transaction, and the superseding indictment is filed more than thirty days after the defendant's arrest, the filing of the original indictment tolls the thirty-day limit set forth in the statute."  *Id.* at 347 (citing *United States v. Perez*, 217 F.3d 323, 328-29 (5th Cir.2000)).

[8] The STA specifically describes "[t]he factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

In addition, the Fifth Circuit has discussed the seventy (70) day requirement under the

STA:

> As a general matter, the Speedy Trial Act requires that a defendant be tried within 70 days of his arraignment. The Act also allows the clock to be stopped or reset as a result of various events in the pre-trial process. In general, the clock will stop when motions are pending before the trial judge, or during an appeal. When the clock stops for such a proceeding, all days between and including the commencement and termination of the proceeding are excluded from the seventy-day count.
>
> . . . .
>
> If the case is not tried within the time limits specified by the Act, the case must be dismissed if the defendant moves for dismissal before trial.

*U.S. v. Kington*, 875 F.2d 1091, 1107 (5th Cir. 1989) (citing 18 U.S.C. § 3162(a)(2)).  However,

the Fifth Circuit also stated that "defendants ought not to be able to claim relief on the basis of

delays which they themselves deliberately caused."  *Id.* 1108.

In *U.S. v. Banks*, 27 Fed.Appx 354 (6th Cir. 2001), the Sixth Circuit noted that the

"Supreme Court has articulated a four-part balancing test for courts to use in considering whether

a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons

for the delay; (3) whether the defendant has asserted his right; and (4) the prejudice suffered by

the defendant as a result of the delay."  *U.S. v. Banks*, 27 Fed.Appx 354, 358 (6th Cir. 2001)

(citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  The *Banks* court noted that the trial date was

---

. . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant **or** the Government continuity of counsel, **or** would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

18 U.S.C. § 3161(h)(8) (emphasis added).

continued six (6) times in that case and that "each continuance was necessitated" by the

defendant. *Id.* Specifically, the last continuance was granted after new counsel was enrolled to

represent Banks. *Id.* The Sixth Circuit found that the challenged continuance was a proper "ends

of justice" continuance because "it was an effort by the district court to provide Banks with

competent representation at trial by allowing his new counsel to become familiar with the case."

Furthermore, the Sixth Circuit stated, "[t]he right to a speedy trial is not intended to 'provide

defendants with tactics for ensnaring the courts into situations where charges will have to be

dismissed on technicalities.'" *Id.* (quoting *United States v. Cianciola*, 920 F.2d 1295, 1298-1300

(6th Cir. 1990)).

        In this case, Lemann challenges the Court's granting of the continuance on February 11,

2008.  Specifically, Lemann asserts that the Court could not grant an "ends of justice"

continuance to allow the Government additional time to file a superceding indictment.  The

record demonstrates that trial was set for February 25, 2008[9] when the Government requested a

continuance on February 8, 2008 "to present a superseding indictment setting forth additional

charges against the defendant.  Rec. Doc. 64, p. 1-2.

        The Court notes that Warner was represented by the Federal Public Defender ("FPD")

(Gary Schwabe) at the beginning of February 2008.  By letter, dated February 7, 2008, Warner

filed a complaint alleging ineffective assistance of counsel against the FPD and requested that

Gary Schwabe be removed from the case.  Rec. Doc. 68.  Although the challenged Motion to

Continue, filed by the Government on February 8, 2007, stated that the Government sought a

delay to file a superceding indictment; it is the Order that granted the motion to continue that

---

[9] See Rec. Doc. 55.

must set forth the reasons in the record for an "ends of justice" continuance. *Zedner*, 547 U.S. at 507-08 (quoting 18 U.S.C. § 3161(c)(1) and § 3161(h)(8)(A)).

Similar to the *Banks* case, Warner's request for a new attorney made the challenged continuance necessary. Again, "[t]he right to a speedy trial is not intended to 'provide defendants with tactics for ensnaring the courts into situations where charges will have to be dismissed on technicalities.'" *U.S. v. Banks*, 27 Fed.Appx 354, 358 (6th Cir. 2001). The challenged Order, Rec. Doc. 65, specifically states that "the failure to grant such a continuance would deny the defendant a reasonable time necessary for effective preparation should the matter proceed to trial, taking into account the exercise of due diligence." Notably, Warner requested that the public defender, Gary Schwabe, be removed and that new counsel be appointed approximately two weeks before the scheduled trial date. Rec. Doc. 68, Letter 2, dated February 7, 2008. Indeed, Bruce Ashley was appointed as Warner's new counsel on February 14, 2008. Rec. Doc. 70. Thus, the Court's finding, in the record, that "the failure to grant such a continuance would deny the defendant a reasonable time necessary for effective preparation should the matter proceed to trial, taking into account the exercise of due diligence" falls squarely within the STA's statutory requirements for an "ends of justice" continuance. *See e.g.*, *Zedner v. U.S.*, 547 U.S. at 506. Accordingly, Lemann's argument that the superceding indictment should be dismissed for failure to satisfy the STA's "ends of justice" requirement is unconvincing.[10]

### 2. Vindictiveness

Lemann argues that the Government improperly filed the superceding indictment to "up the ante" or punish Warner for his refusal to plead guilty. On that basis, Lemann argues that a

---

[10] For reasons set forth in Section 3, the Court does find that Counts 54-66 must be dismissed as violating the STA.

presumption of vindictiveness must be applied against the Government and that the superceding indictment must be dismissed.  The Fifth Circuit recently addressed presumptions of vindictiveness in the pre-trial context.  In *U.S. v. Saltzman*, — F.3d —, 2008 WL 2807475 (5th Cir. 2008), the court of appeals declined to extend a presumption of vindictiveness when the Government filed a superceding indictment charging additional crimes following a defendant's successful withdrawal of a guilty plea.

In *Saltzman*, the Fifth Circuit held: "a prosecutor may not increase the charge against a defendant solely as a penalty for invoking a right, such as pursuing an appeal."  *U.S. v. Saltzman*, — F.3d —, 2008 WL 2807475, at *4 (5th Cir. 2008) (internal citations omitted).  Specifically, the court ruled that "[t]he presumption of vindictiveness is a prophylactic rule designed to protect a defendant's due process rights where a danger exists that the government might retaliate against him for exercising a legal right."  *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). The Fifth Circuit noted the general rule for vindictiveness: a "court must examine the prosecutor's actions in the context of the entire proceedings.  *Id.* at *5 (quoting *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983)).

The *Saltzman* court found that it was bound by the decisions in *Bordenkircher* and *U. S. v. Goodwin*, 457 U.S. 368 U.S. (1982).  *U.S. v. Saltzman*, — F.3d —, 2008 WL 2807475, at *6 (5th Cir. 2008) (discussing lack of distinction between *Saltzman*, *Bordenkircher* and *Goodwin*). The Fifth Circuit explained that a presumption of vindictiveness cannot be predicated on the fact that "the Government had full knowledge of the facts in the case, but did not include any of the additional charges in the original criminal complaint or indictment."  *Id*. at * 7.  Specifically, the *Saltzman* court relied on *Goodwin* to restrict presumptions of vindictiveness in pre-trial settings:

8

> in *Goodwin*, the Court considered whether to apply a presumption of vindictiveness when the prosecutor indicted the defendant on a felony charge after the defendant declined to plead guilty and requested a jury trial on a misdemeanor charge. In that case, the Court noted that there is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. First, although a prosecutor's assessment of the evidence may be in flux prior to trial, once a trial begins it is much more likely that the State has discovered and assessed all the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*U.S. v. Saltzman*, — F.3d —, 2008 WL 2807475, at \*6 (5th Cir. 2008) (internal quotations and citations omitted).  Further, the court of appeals concluded that "the presumption of vindictiveness was not warranted where the prosecution had done no more than 'openly present [ ] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution.'"  *Id.* at \*6 (quoting *Bordenkircher*, U.S. at 365).

Lemann attempts to distinguish this case from *Saltzman* on several grounds: 1. The original indictment was not the by-product of plea negotiations; 2. the superceding indictment was filed after Warner was released from pre-trial detention; 3. the "outrageous" nature of the superceding indictment.  The Court does not find these grounds sufficient to distinguish this case from *Saltzman*.  The Court finds the reasoning of *Saltzman*, which failed to apply a presumption of vindictiveness in a pre-trial setting, persuasive:

> Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation-in often what is clearly a "benefit" to the defendant-changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment-from which the prosecutor embarks on a course of plea negotiation-does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser

9

charges proves unfounded.

*U.S. v. Saltzman*, — F.3d —, 2008 WL 2807475, at *6 (5th Cir. 2008) (quoting *Goodwin*, 457 U.S. at 379-80).

In this matter, Warner's repeated requests to remove and substitute counsel have extended the proceedings and established his unwillingness to plead to lesser charges.   In addition, Warner has meticulously challenged numerous acts by the government, justifying the government in wanting to likewise meticulously dot every "I" and cross every "t" in its charges. Although the superceding indictment lists eighty-three (83) counts, and may give the appearance that the Government is piling counts upon Warner, the Court is not convinced that the Government has acted in a vindictive manner.  Indeed, the circumstances of this case demonstrate that any initial expectation that Warner would plead guilty to lesser charges was unfounded. Essentially, Warner has declined the opportunity to plead to the original indictment, and the Government's superceding indictment merely presents Warner with the unpleasant alternative of facing charges on which he mat be subject to prosecution.  *Saltzman*, — F.3d —, 2008 WL 2807475, at *6.  Accordingly, the Government's decision to file a superceding indictment, within the context of the entire proceedings, is not vindictive.

### 3. Gilding the Lily

Lemann begins the "gilding the lily" section of his argument by noting that the STA requires an indictment to be filed within thirty days of arrest, but that the Government filed the superceding indictment against Warner approximately sixteen months after his arrest.  Lemann then moves to a discussion of *United States v. Giwa*, 831 F.2d 538 (5th Cir. 1987), which

analyzed the "gilding the lily" exception, but failed to apply the exception to dismiss a superseding indictment. *Giwa*, 831 F.2d at 543 (stating "[t]he offenses for which Giwa was arrested and indicted, while arising from the same criminal transaction, are separate and distinct offenses each requiring proof of different elements; therefore, the 'gilding' exception does not apply.").

It is important to note the general rule under the STA: "[w]hen . . . the government files a superseding indictment based on the same criminal transaction, and the superseding indictment is filed more than thirty days after the defendant's arrest, the filing of the original indictment tolls the thirty-day limit set forth in the statute." *U.S. v. Hartzog*, 189 Fed.Appx 340, 347 (5th Cir. 2006); *see also U.S v. Perez*, 217 F.3d 323, 327 (5th Cir. 2000) (stating, "where the superseding indictment adds no new facts and contains charges identical to those in the original timely indictment, the filing of the first indictment tolls the speedy trial 'clock.'"). The "gilding" exception applies "[i]f a subsequent charge merely 'gilds' the initial charge filed against an individual and the different accusatorial dates between the two charges are not reasonably explicable, the date of the initial arrest may trigger the applicable time periods of the Act as to prosecution for both offenses. *U.S. v. Giwa*, 831 F.2d 538, 542 (5th Cir. 1987) (citing *United States v. Napolitano*, 761 F.2d 135, 138 (2nd Cir. 1985)).

Lemann's reliance on *U.S. v. Giwa*, is misplaced because the facts of this matter do not fall into the "gilding" exception. In *Phipps* the Fifth Circuit carefully reviewed the cases that have discussed the "gilding" exception:

> Our precedents involve two kinds of allegedly untimely indictments. First, a defendant is charged in a complaint, arrested, and timely indicted for the offense charged in the complaint. Later (and after the STA period has run), a superseding indictment charges new offenses not contained in the complaint. *United States v.*

> *Bailey*, 111 F.3d 1229 (5th Cir. 1997); *United States v. Giwa*, 831 F.2d 538 (5th
> Cir. 1987). Second, a defendant is charged in a complaint, arrested, and timely
> indicted for an offense not charged in the complaint. Later (and after the STA
> period has run), a superseding indictment alleges the offense charged in the
> complaint. *Martinez-Espinoza*, 299 F.3d at 415-16; *United States v. Perez*, 217
> F.3d 323 (5th Cir. 2000).

*U.S. v. Phipps*, 319 F.3d 177, 182 (5th Cir. 2003).  The Fifth circuit found that the facts of *Phipps*

matched *Giwa* because the defendants were: (1) charged in a complaint; (2) arrested and timely

indicted for the offense charged in the complaint; and (3) a later, untimely, superseding

indictment charged new offenses not contained in the complaint.  *Phipps*, 319 F.3d at 182.  The

*Phipps* court specifically found that the Government had not gilded the lily "because the

superseding indictment did not merely supply supporting facts for the kidnaping charge, but

added four entirely new charges."  *Phipps*, 319 F.3d at 182.

　　　　This matter is distinguishable from *Phipps* and *Giwa* because the original indictment

charged crimes that were not contained in the complaint.  As noted above, section 1029(a)(1)

prohibits the use of counterfeit access devices, while section 1029(a)(2) prohibits the

unauthorized use of access devices.  The Fifth Circuit applies the *Blockburger* test to determine

whether the same act or transaction constitutes a violation of two different statutory provisions.

*See e.g.*, *U.S. v. Soape*, 169 F.3d 257, 266 (5th Cir. 1999); *Phipps*, 319 F.3d at 183 n. 4.  In *U.S.*

*v. Gugino*, the Second Circuit applied *Blockburger* to §1029 and determined that "[s]ubsections

(1) and (2) of §1029 are separate and distinct portions of the statute, each prohibiting separate

conduct-the former with respect to a counterfeit access device and the latter with respect to an

unauthorized access device." 860 F.2d 546, 550 (2nd Cir. 1988).  The Second Circuit determined

that the different subsections "require[d] different proof-criminal use of a counterfeit device

requires the forgery of a signature, while criminal use of an unauthorized device requires that the

device be obtained in an improper manner." *Id.*   Adopting the reasoning of the Second Circuit, the Court concludes that the Government charged a different offense in the original indictment than in the complaint.  Therefore, this matter is more analogous to *Perez* and *Martinez-Espinoza* than *Phipps* and *Giwa*.[11]

> In *Martinez-Espinoza*, the Fifth Circuit held:
>
> The STA requires dismissal where an indictment is filed more than a specified number of days after the charge. 18 U.S.C. § 3162(a). In Espinoza's case, that limit was thirty days. 18 U.S.C. § 3161(b). Espinoza was charged on November 22, 2000; the first indictment was handed down on December 19 and the second on February 21. In *United States v. Giwa*, 831 F.2d 538, 541-42 (5th Cir.1987), we adopted a narrow reading of the dismissal language in § 3162(a). Thus, "dismissal of the charge is required only if an indictment is secured more than 30 days from the filing of a complaint and contains identical charges." *United States v. Perez*, 217 F.3d 323, 327 (5th Cir. 2000), *cert. denied*, 531 U.S. 973, 121 S.Ct. 416, 148 L.Ed.2d 321 (2000). Where, as here, there is both a timely and an untimely indictment, the first instrument will toll the STA clock only if the indictments charge an identical offense.

*U.S. v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002).  In *Perez*, the defendant argued that "his statutory right to a speedy trial was violated because the superseding indictment contained charges identical to the charge in the original complaint but different from the charge alleged in the first indictment."  *Perez*, 217 F.3d at 327.  Perez was initially charged with aiding and abetting one person, and was later indicted for aiding and abetting two different people.  *Id.* at 328.  The *Perez* court held that the timely original indictment tolled the STA clock, making the superseding indictment timely because the two indictments charged the same statutory violations.

---

[11] Warner cannot take advantage of the "gilding" exception because the superseding indictment did not merely supply supporting facts for the 1029(a)(1) allegations in the original indictment, but added new offenses under section 1029(a)(2).  *See Phipps*, 319 F.3d at 182 (stating, "Defendants cannot take advantage of the gilding exception, however, because the superseding indictment did not merely supply supporting facts for the kidnaping charge, but added four entirely new charges.").

Specifically, the court held:

> the instant case the complaint and first indictment charged Perez with aiding and abetting two codefendants in harboring an undocumented alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (iii) and 18 U.S.C. § 2 on or about March 19, 1998. The superseding indictment likewise charged Perez with the same statutory violations based on the same underlying circumstances. Thus, we conclude that the first indictment tolled the 30-day arrest-to-indictment clock.

*Perez*, 217 F.3d at 328-29 (footnotes omitted).

In this matter, the complaint, filed June 14, 2005, charged Warner with violating 18 U.S.C. § 1029(a)(2) occurring around May 2005 and involving J.P. Morgan Chase customers. Rec. Doc. 1. Warner was arrested for those charges on December 13, 2006. The original indictment was filed on January 11, 2007, within thirty (30) days of arrest, alleging a one count violation of 18 U.S.C. § 1029(a)(1). Rec. Doc. 8. Subsequently, an untimely superseding indictment charging eighty-three (83) counts for violating both 18 U.S.C. § 1029(a)(1) and 18 U.S.C. § 1029(a)(2) was filed on April 17, 2008. Rec. Doc. 72. Because the original indictment charged Warner with crimes under 18 U.S.C. § 1029(a)(1) as opposed to the complaint, which alleged violations of 1029(a)(2),[12] the Court determines that the original indictment added entirely new charges, and thus, the original indictment did not toll the STA clock as to the 18 U.S.C. § 1029(a)(2) charges in the original complaint. Accordingly, the superceding indictment's allegations regarding 1029(a)(2) violations in 2005 involving Chase customers, Counts 54-66, are untimely and must be dismissed. *See U.S. v. Martinez-Espinoza*, 299 F.3d 414, 416 (5th Cir. 2002); *Phipps*, 319 F.3d at 181-82 (stating, "[i]f a complaint is filed charging [an] individual

---

[12] Again, sections 1029(a)(1) and (a)(2) are different crimes, pursuant to *Blockburger. Gugino*, 860 F.2d at 550.

with an offense, and the indictment charging the offense is untimely, such charge against that individual contained in such complaint shall be dismissed.") (quoting 18 U.S.C. § 3162(a)(1)) (internal quotations omitted).

Stated another way, Warner was indicted within thirty days of his arrest for a section 1029(a)(1) violation; however, section 1029(a)(2) was alleged in the complaint involving Chase bank customers in 2005. Thus, the complaint started the STA's 30 day clock for those charges under § 1029(a)(2) and the original indictment did not toll the clock because it only alleged a § 1029(a)(1) violation. Consequently, the Government's attempt to charge Warner under § 1029(a)(2) in the superseding indictment, with regard to the allegations in the complaint, approximately sixteen (16) months after his arrest, was untimely. As a result, the STA requires that the § 1029(a)(2) charges in Counts 54 - 66 of the superceding indictment be dismissed. *Phipps*, 319 F.3d at 181; *Martinez-Espinoza*, 299 F.3d. at 418 ("different offenses . . . cannot be substituted one for the other to toll the STA's thirty-day clock.").

The fact that part of the superceding indictment must be dismissed does not end the matter. "The dismissal sanction contained in § 3162 leaves to the court's discretion whether to dismiss with or without prejudice." *Martinez-Espinoza*, 299 F.3d. at 418. "This discretion is channeled through three factors, consideration of which is mandatory: (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of the STA and on the administration of justice." *Id.* (citing 18 U.S.C. § 3162(a)(1)).

In this matter, the Court finds that dismissing without prejudice is appropriate

15

because the Government's error has had no impact on Warner's right to a speedy trial.[13]

Similar to *Martinez-Espinoza*, "everything was proceeding apace on the assumption the

first indictment was proper."  Indeed, Warner's repeated requests for new and different

counsel have delayed the trial in this case more than the Government's oversight with

regard to charging a different sub-section of 18 U.S.C. § 1029 in the original indictment

than in the complaint.  Following a careful weighing of the three factors outlined above,

the Court concludes that dismissal without prejudice is appropriate in these

circumstances.


### III. CONCLUSION

IT IS ORDERED that the Motion to Dismiss the Superseding Indictment is

GRANTED IN PART (Rec. Doc. 139).  Counts 54 - 66 of the superseding indictment

setting forth violations of 1029(a)(2) shall be dismissed without prejudice .

New Orleans, Louisiana, this 9th day of September, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[13] As noted in *Martinez-Espinoza*, "The government's negligence, though, merits some
consequence . . . [e]ven dismissal without prejudice imposes some costs on the government."
299 F.3d at 419.